The issue as I see it, the first assignment of error is whether there is sufficient evidence in this record to permit an inference that the defendant Springmeier acknowledged that a firearm would be used in this robbery for purposes of 924C. I think that the case law is relatively clear that for purposes of accomplice liability in a 924C action, the defendant must have actual knowledge and specific intent to facilitate the use of that firearm. At page 15 of my brief, I've set forth what I believe is the only evidence really in the record from which an inference can be drawn that the defendant Springmeier had actual knowledge that a firearm would be used in this crime. Is actual knowledge enough to get aid in the bedding? Actual knowledge that the firearm would be used by an accomplice? Yeah. I believe you also would have to have specific intent to facilitate the crime. Encouragement, et cetera. Or for instance, in this case, the detonation of a diversionary device at another location. But that doesn't establish actual knowledge that a firearm could be used, was going to be used in the case. Well, I'm sure the government's going to step up and say, look, he's sitting there and before they're planning the robbery, his co-defendant says, I'm going to take my AK. That's the question. When the co-defendant says, I'm going to take my AK, we are completely devoid of facts regarding the location of where Springmeier was when that statement was made, other than he was present. It could have been, but there's a jury that had to draw inferences and et cetera, and I think that's going to be kind of a tough one, but is that enough? Let's set that one aside for a second. Assume he did hear that it was going to take an AK. Is that enough to get him on 80 and in bedding? No. I believe that he would have to do something further with respect to the entire robbery to facilitate use of the firearm. Would he have to do something further in respect to the whole robbery or something further in respect to using a gun during the robbery? I hate to concede any issue, Your Honor, but I believe that in my mind it was the whole robbery, that once the defendant had actual knowledge that a firearm was going to be used, if he did, after he knew the firearm was going to be used, if he facilitated the entire robbery, then I would think liability would extend, pompous liability would apply. Now, would facilitation of the entire robbery, including having a diversionary explosion? Yes. So your argument really boils down to whether or not, in fact, he heard his co-defendant say, I'm going to take my AK? Precisely. And I believe that the record, as I've stated in my brief, is painfully thin on that issue. It's just simply not developed with all due respect to Mr. Noonan. All we have is an involved accomplice, Mr. Huntington, who's testifying on behalf of the government saying that the principal, Mr. Bateman, announced his intention to use an AK-47. And the next question was, was Mr. Springmeyer present? And the answer to that was yes. But we don't know the volume of Mr. Bateman's voice. We don't know the layout of the living room where the statement was allegedly made. And I was going to ask if you could refresh me on exactly where this meeting was held. It was held at... In other words, what the record shows us. Bateman's house. Bateman was the government's witness. I believe he had a house in Huntington. The principal was at his house as well. The record would show that the night before the robbery that Huntington... I'm not positive that it wasn't Bateman's house. I may be mistaken on that. Because it seems like Huntington came over to the house that was Bateman's house. Huntington came over with Springmeyer and then assisted in the preparation of the bomb as Bateman was allegedly getting his materials ready for the bank robbery, which was to take place the next day. So at least part of this meeting, they're sitting in the living room of this house. But your position is at the time this statement is made, there's no evidence in the record as to where the appellant was, whether he heard it. The question that was posed to Huntington is, was Mr. Springmeyer present when Bateman... made the statement, I'm going in with my AK-47? The answer was yes. At ER 21, question, and while the three of you were in the living room, was there any discussion about Bateman's use of firearms? Yes. What if anything was said? He was going in with the AK. Correct. And was Mr. Springmeyer present when that was said? The answer is yes. Wasn't that sufficient evidence from which a reasonable trier of fact can infer that Springmeyer heard Bateman say the AK was going to be used in the robbery? No, not in my mind, because in the context... I'm not talking about whether it would convince you. Okay, not in the jury's mind. Well, apparently it was in the jury's mind since they were instructed... But your argument is that that evidence, as a matter of law, is insufficient to permit a jury to find... Without what? Without some further evidence as to whether the tone of his voice was high enough so that he could hear, whether he made any outward indication of hearing what that was, whether he made any inquiry as to what model AK-47 he was going to use, where he was. He could have been present 30 feet away. In the living room? Well, we don't know anything about the living room. I'll move on to my second assignment of error, because it also poses what I think is an interesting question. It is a plain error argument. No objection was made to Mr. Noonan's rebuttal argument, but it seems clear from that argument that Mr. Noonan was requesting that the jury come to the conclusion that Mr. Springmeier, who had not testified during the trial, had provided his counsel with inside information about the robbery and that that inside information was then used by counsel during cross-examination of Huntington to bluff him into making admissions. And Mr. Noonan's response is that if, in fact, that was error, and I don't believe he would concede that, but if, in fact, the argument was error, it was an invited response to the argument made by defense counsel. Defense counsel's argument was, during closing, we sort of bluffed Huntington into admitting that he had driven interference during this robbery. And we have to look at that in light of all the other testimonies of Huntington, which was that he actively participated in this whole robbery. So really from the defense perspective, counsel was conceding that he didn't have any evidence that Huntington drove interference. He was bluffed. And I believe that that was an appropriate argument, that that was a reasonable inference from Huntington's testimony at trial, and that the prosecution, the government, went way beyond that by insinuating that the basis for that bluff was inside knowledge from the petitioner, from the defendant who had never testified at trial. That's extremely prejudicial. I believe that it meets the plain error standard, which I understand is a very high standard. But that's my argument on that, unless the Court has other questions. Is it your point that the prosecutor cannot draw an inference as to what the defendant might have informed his counsel when the defendant doesn't testify? Yes. What's your case for that proposition? Well, I've cited this court to a Fourth Circuit case, which is Carroll. It's not directly on point, but it was it's close enough, I believe. And in that case, the defendant went to a board, a display board during trial, and was pointing out things with his attorney as he stood up next to the board. And the prosecution argued in that case that the defendant obviously had knowledge about the crime because he was interacting with the board and talking to his counsel. And it seemed to me that that case, in a case that clearly doesn't fit into that evaluation, the defendant has a right to be convicted on evidence adduced against him at trial. In this case, the prosecution's argument concerned evidence that was not adduced at trial. There was nothing in the record, in this record, indicating that Mr. Springer had ever advised his counsel about details of his robbery. And that is essentially what counsel argued to the jury. The defense counsel boasted to the jury that he had some inside information and bluffed Huntington into admitting he was running interference. Right. Second part is correct. He boasted that he had bluffed Huntington into making admission, but he didn't state the basis or the source of that bluff. Is there a legitimate inference that the bluff was based on some knowledge? No. Oh. Because there are many other legitimate inferences. Well, there may be other legitimate inferences, but isn't one of them that that knowledge had gotten to the defense counsel somehow? Perhaps if there was some evidence in the record that would support that inference, but there isn't. Thank you. Thank you, sir. Please report, Mr. Kraftensen. If the court would allow me to do so, I'd like to briefly comment on issue number two on the plain error analysis and then spend as much time as I can with the first issue on the sufficiency and also respond to some of Judge Wallace's questions. First of all, with respect to the comment, Your Honor, plain error analysis applies. I'm not conceding error. If there was some error, I think it would require showing a miscarriage of justice, and I don't think it amounts to that. But moreover, I think that the comment, I guess I shouldn't use those words, but the comment that was made, I believe, was a fair response to a closing argument by the defense counsel, which I think clearly did imply that the defense counsel had some evidence that was not in the record that it was used to bluff the witness, Huntington, into telling the truth, into making some admissions he hadn't made prior to anyone, and the record's clear on that. I think that was a fair response. I think it was the kind of response that the Supreme Court anticipated in Young, and that it would give or take a trial that that comment was a fair one and one that was appropriate in light of then-trial counsel, Mr. Birmingham's, comments to the jury. With respect to the sufficiency question, some of the law here is very clear, but maybe I'll spend just a second reviewing it. Because this is an appeal from the verdict of a jury on sufficiency, there is, of course, a long, long line of cases holding that this court will now view the evidence in the light most favorable to the government. Included in those cases are observations by this court that not only will the court consider evidence in the light most favorable to the government, but this court will assume that the jury drew inferences from that evidence consistent with the verdict that they achieved. And I think that's important in addressing that question. Secondly, unlike this court's opinion in Duquesne, here the jury had a very appropriate aiding and abetting instruction given by Judge Redd. And your honors will recall that when he did that, he instructed them, based on Duquesne, not only to find aiding and abetting, as Judge Wallace suggested, with respect to the whole bank robbery, he very specifically told them that they had to find the aiding and abetting with respect to the firearm. And the court will recall that... Aiding and abetting the use of the firearm in the bank robbery. Yes, your honor. And the court will recall that... That's exactly what Palmer requires. The jury must have then given that some thought because they asked for supplemental, and Judge Redd repeated that instruction to them. I don't mean Palmer. I meant Nelson. I misspoke myself. That's why I don't agree with counsel that it's sufficient that they facilitated the robberies overall. We specifically indicated in Nelson, there must be evidence that Edwards and Lott facilitated or encouraged the use of the firearm, not merely the overall robbery. So you're taking the position as more restrictive than counsel argued it, and based upon Nelson, you're saying that the judge gave that instruction for the jury to find that the facilitating and encouragement had to be in the use of the firearm in the robbery. And that jury instruction is founded. Your honor, I cited it in my brief, and also in the brief I cited the fact that Judge Redd returned to that question during jury deliberations and emphasized to the jury what they had to find. Okay. Now, what is the evidence before the jury from which they could find that whatever the defendant did, it encouraged and facilitated the use of the firearm in the robbery and not merely the robbery? Passing to that question, your honor, and to correct, I have a substantial advantage over my colleague, Mr. Jefferson, here because he didn't try this case, and I was there. His recollection is from the record. I'm pretty sure it was not Mr. Bateman's house. The facts were, I believe, that it was Mr. Bateman and Mr. Springmeier, Mr. Bateman was the co-defendant, who called Mr. Huntington at Mr. Huntington's home. Not that it makes a huge difference, but they advised Mr. Huntington that they needed a place to plan the bank robbery, and I believe they said to finalize some details. That's the evening before the bank robbery. They go to Mr. Huntington's home, where Mr. Bateman was living at the time. Mr. Springmeier was living some distance away, and they make the plans, and the court will recall from the transfer from the briefs, they talk about utilizing a bomb as a diversionary device in the bank robbery. I think that very clearly intended to divert attention, and particularly police attention, and that's sort of consistent with what Mr. Huntington admits to later on, because he's driving interference, and I think the inference from that is he's interfering with the police, who might be responding to the Damascus bank robbery. So they talk about the bomb, and in fact, Mr. Springmeier is constructing the bomb, and Mr. Huntington says that they're there in the living room, all three of them. He's making the bomb. Mr. Bateman is getting ready to go, and getting ready to go means he's getting some clips of ammunition ready to go. He's got a hip-hugger holster, and then he makes the statement, I'm going in with the AK, which in fact, the later evidence shows that's what he did. He goes in with the AK. He fires a shot through the roof. He puts one witness down on the floor with the muzzle of the AK. Now, that's all dealing with the planning. That's all planning stuff, but the planning also includes stealing a car, in bank robbery parlance, I guess getting a cold car, and then having Mr. Springmeier set off the diversionary device, and having Mr. Springmeier available to drive getaway from the bank. So they do those things as well. Let me tell you why. You may be entirely right, but this is the problem I have with it. Diversion, running interference, all of these would be to support a bank robbery. Where is the circumstantial evidence that is to support the use of a gun in a bank robbery? There, Your Honor. I've read Easter and Nelson and Duquesne and all of these cases, and it probably still leaves that question a bit open. I'm concerned that some of those cases, well, not my concern really, it's the court's concern, may just do away with AIDR and a better liability in a 924C context. I mean, if this is not enough, then what is? And addressing your question as directly as I can, do Nelson, Easter, and Duquesne mean that in order to prove AIDR and a better liability in a 924C context, we have to show that the AIDR and a better handled the weapon or procured the weapon, you know, historically? Mr. Newman, why not do it much more simply? Isn't the diversionary bomb thought and in effect the way to make the use of a single rifle more effective? It is, Your Honor. I'm not seeing that connection exactly. Well, Your Honor, I think the use of a diversionary device after the fact, as I argued in the brief, was designed to allow Mr. Bateman to get in and out of the bank without the thing that he feared the most, which was a police response to the bank. So how does that tie in with the, how does it make it more effective, more likely you can use the gun effectively? I think it encouraged him to be there and to use the gun. The fact that he knew Mr. Springmeier was waiting in a getaway vehicle, that he knew a bomb would go off and divert attention, that he knew based upon Mr. Huntington's admissions that there would be some effort to interfere with the police response to Damascus. I think all of those things taken together encouraged and facilitated the use of the weapon. And if I might, this is an area where I think this Court's opinion in this case will maybe clarify some of the issues raised in that trio of cases. And if it's going to, if showing 924C liability, Your Honor, it's going to require some physical transmission of the weapon or some possession of the weapon, it's going to lead to very anomalous results in bank robbery cases. It's possible that the government could, I mean, I suppose you could argue that if you aid and abet the whole, then you're aiding and abetting, you know, each of the parts that are some part that's integral to it. And the use of the gun was sort of a key part of this bank robbery. And I don't know if the cases require something more specific. If I have to, I see my time's up, Your Honor, but I have just 20 seconds to respond. We'll give you a little time and we'll give your colleagues some rebuttal time. Thank you. I will respond as quick as I can. I think the government would have to concede that simply aiding and abetting in a bank robbery without knowledge of the weapon, that's not, you know, I'm not going to argue that. But were someone situated as Mr. Springmeier, aids and abets, knowing beforehand that a gun is going to be used and doing acts to facilitate the bank robbery and then acting again during and after the bank robbery to facilitate the bank robbery, then I think a jury could infer specific intent from that. What's the closest case? I think probably the closest cases are Nelson and Easter. Those are the cases. And if I can just be permitted one last comment. Take what time the court's engaged on this issue. A little up in the air. Thank you. So we should decide. I don't know if this will be helpful to the court or not. I hope it will be. But what concerns me are the anomalous results that could flow from a potential holding that one must physically transmit or possess the gun. Let's, if we assume, as we see, you're not used to, I just sit and listen to lots of bank robberies. Multiple persons involved in a bank robbery, I'm one of them. And I say, okay, here's what I'm going to do for you to help the bank robbery. I'll get the car. I'll drive the car. I'll wait outside the bank for you. I know you're going to be in a hurry because you're going in with a gun and you don't want to be confronted with the police. I'll be there for you, and if I can distract attention, I'll do all of that. Well, if the court were to extend this line of case as far enough, you'd find I didn't touch the gun, even though I knew. So, therefore, I escaped aid or an embedded liability. Now, let's assume there's one other person in that scenario, Susie Jones, the girlfriend of the bank robber. And all she does is drive across town to pick up the gun for her, brings it back to the house and gives it to him. No other role in the bank robbery, but she had the gun. Maybe she's the 924C. I would urge the court to find that the combination of circumstances presented in a case like this where there's foreknowledge that a gun's going to be used, where a defendant facilitates that in planning the bank robbery, and then where the defendant does things to further the bank robbery, the diversionary device, and then assists as a getaway driver, should be enough. Your closest case is Easter, isn't it? Probably. And in Easter, the only difference between Easter in this case, the defendant overheard the planning. The defendant was in the car when they went. They talked about the gun. She saw the gun, and they decided who was going to carry the gun. You have exactly the same thing here, except they didn't see the AK. There's no evidence he saw the AK. But they talked about it, and he was getting ready, and he was getting armed. And I think in that case, your Honor, also the court— Is that the—I'm not sure how much of a stretch it is from that case to this. Well, my position would be it's not a stretch, but I would also point out that the court observed in that case that Leah, who was— I think the courts had the opportunity to both see and hear, and I guess that's a response to maybe Springmeier was there but didn't really hear. Even though it seems like a lot of extra time. Thank you. We appreciate it. Mr. Greffinson, we're going to give you equal time here, so please give him four minutes. If there's any consolation, I don't have— You don't have to use it all, but— —another argument this morning about understanding my brief, so I'll save some time. I guess the first thing I should do is jump on the more restrictive interpretation bandwagon. I didn't get that out of the cases. I—unfortunately, I guess from my position, I somewhat assumed that once there was knowledge that the weapon would be used in the crime, that participating in the crime in whatever sense would facilitate use of that part of the— We're going to see how good you are on your feet now. Okay. Well, if we take the cases literally, and hearing this court's comments, it sounds like we need to do away with 924C liability unless we have absolute evidence that somebody participated directly in use of the firearm. And I guess that's the best argument that I can come up with. It's not thinking that quickly. Making the firearm more effective because there's a simultaneous detonation of a bomb nearby, which takes the police who might be able to handle the AK-47 out of the picture and just puts the clerks in the bank on the floor, that is not facilitating the effective use of an AK-47? Perhaps. I mean, we can stretch that as far out as we want to go at some point. But unless the court has other specific questions, that's pretty much all. I don't on that. But on your plain error argument, can you give me as literally as possible, what were the words used in the rebuttal or the government's response to the defense lawyer? Yes, I can. They're set forth, they're quoted in the brief itself at page 19. I remember seeing them in the brief, but at this point the quotation was, ladies and gentlemen, I suggest to you there's another side of that coin. If all that is true, and what counsel is talking about at that point, is if Huntington was really bluffed into making the admission, if all that is true and all the evidence you've heard suggests it is, in other words, government conceding that it was, that this bluff did occur, that no one was ever told about that driving, that the ATF agents, the FBI agents, no one was told about that driving, then I'll submit to you the only people who knew about that driving were who? The people that planned the bank robbery and did it. The only people who knew. No one else was told. It didn't come from any other witness. And Mr. Springmeyer was one of those people. And that again is at page 19 of the brief. Thank you. Well, thank you very much, both counsel. We appreciate it. And we'll look forward to seeing you again. The next case we have is U.S.C. Seymour. That's submitted on the brief. Would you like to take a break now or go on? I'll take a few. Okay. I just see some. No. Do you want to do one more? No. We'll proceed with the next case, which is Rose v. I'm sorry. Keep reading over. Yeah, Rose v. This is the case on which I wish to stand on my brief unless the court wishes to inquire of me. Just give the panel a moment. Certainly. Thank you.
judges: Wallace, Gould, Bea